UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

ELLEN BLONDER

        Plaintiff,                                      Case No.: 2:21-cv-00912-ARR-AYS

v.

INDEPENDENCE CAPITAL RECOVERY, LLC

        Defendant.
_____

**DEFENDANT INDEPENDENCE CAPITAL RECOVERY, LLC'S SUPPLEMENTAL
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR FEES**

**LIPPES MATHIAS LLP**

Brendan H. Little, Esq.
50 Fountain Plaza, Suite 1500
Buffalo, New York 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT AND PROCEDURAL HISTORY ................................. 1

ARGUMENT ......................................................................................................................... 3

    I.  THE MAJORITY OF BILLING ENTRIES DISCLOSED BY PLAINTIFF'S COUNSEL PURSUANT TO THE COURT'S ORDER ARE NOT RECOVERABLE UPON REVIEW OF THE UNREDACTED RECORDS ................................ 3

        *i*.  Administrative or Clerical Tasks ............................................................ 5

        ii.  Excessive, Redundant, and Unreasonable Billing Entries ....................................................................... 6

    II.  PLAINTIFF'S COUNSEL'S VOLUNTARY DISCLOSURE OF ADDITIONAL UNREDACTED TIME RECORDS FURTHER EVIDENCE A PATTERN OF EXCESSIVE, DUPLICATIVE, AND UNREASONABLE BILLING PRACTICES IN THIS CASE ............................................................................... 9

    III.  THE NATURE AND CIRCUMSTANCES SURROUNDING PLAINTIFF'S COUNSEL'S NEWLY UNREDACTED TIME CHARGES SHOULD BAR RECOVERY OF ALL ATTORNEYS' FEES SOUGHT IN CONNECTION WITH PREPARING THE FEE APPLICATION ........................................... 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Adusumelli v. Steiner*,
 2013 WL 1285260 (S.D.N.Y. Mar. 28, 2013) ............................................................. 3, 9

*Barshay v. Specified Credit Associates I, Inc.*,
 2016 WL 3578993 (E.D.N.Y. 2016) ............................................................................. 7

*Chavez v. MCS Claim Services, Inc.*,
 2016 WL 1171586 (E.D.N.Y. 2016) ............................................................................. 6

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*,
 188 F.Supp.3d 333 (S.D.N.Y. 2016) ............................................................................. 7

*Dagostino v. Computer Credit, Inc.*,
 238 F.Supp.3d 404 (E.D.N.Y. 2017) ............................................................................. 3

*Grant v. Martinez*,
 973 F.2d 96 (2d Cir. 1992) ............................................................................................ 6

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ...................................................................................................... 6

*Hop Hing Produces Inc. v. X & L Supermarket, Inc.*,
 2013 WL 12329197 (E.D.N.Y. 2013) ........................................................................... 7

*Jacobson v. Healthcare Financial Services, Inc.*,
 516 F.3d 85 (2d Cir. 2008) ............................................................................................ 3

*Lamaka v. Russian Desserts, Inc.*,
 2021 WL 2188280 (E.D.N.Y. 2021) ............................................................................. 5

*Millea v. Metro-North Railroad Co.*,
 658 F.3d 154 (2d Cir. 2011) .......................................................................................... 3

*Missouri v. Jenkins by Agyei*,
 491 U.S. 274 (1989) ...................................................................................................... 5

*Singh v. A & A Market Plaza, Inc.*,
 2019 WL 4861882 (E.D.N.Y. 2019) ............................................................................. 5

*Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement
 v. Helmer-Cronin Const., Inc.*,
 2005 WL 3789085 (S.D.N.Y. Oct. 24, 2005) ............................................................... 4

*Webb v. Mercantile Adjustment Bureau, LLC,*
  Case No. 1:19-cv-00755, (W.D.N.Y. Aug. 8, 2022) ...................................................... 15

**Federal Statutes**

15 U.S.C. § 1692 ................................................................................................................ 1

15 U.S.C. § 1692k, *et seq.* ........................................................................................... 1, 3

Defendant Independence Capital Recovery, LLC ("Defendant" or "Independence"), by and through its attorneys, Lippes Mathias LLP, submits this supplemental brief in further opposition to Plaintiff Ellen Blonder's ("Plaintiff") motion for attorneys' fees (the "Motion"), and pursuant to the Court's Order dated September 13, 2022.  (Doc. 17; Doc. 25).

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

On February 19, 2021, Plaintiff commenced this action alleging that the Defendant herein violated 15 U.S.C. § 1692 ("the FDCPA").  (Doc. 1). On March 23, 2021, Defendant answered the Complaint (Doc. 6).  On the same date, March 23, 2021, Defendant served its first Offer of Judgment.  (Doc. 18-1).  Thereafter – and solely because Plaintiff rejected the first Offer of Judgment of $1,001 – limited discovery was conducted by Defendant. On October 6, 2021, Plaintiff accepted Defendant's second Offer of Judgment, in the exact same amount of $1,001 as was offered nearly seven (7) months prior, and the Court entered judgment accordingly. (Doc. 16).

Thereafter, on October 20, 2021, Plaintiff moved for recovery of attorneys' fees pursuant 15 U.S.C. § 1692k.  (Doc. 17).  Notably, however, § 1692k of the FDCPA only contemplates an award of *reasonable* attorney's fees to a successful litigant.  *See* 15 U.S.C. § 1692k.  In this case, Plaintiff's request for fees is emblematic of the inefficiency in, and potential for misuse of, the fee-shifting provision of the FDCPA.  In resisting the initial Offer of Judgment and proceeding to litigate an uncomplicated case for seven additional months (remarkably without even serving discovery or conducting a single deposition), Plaintiff's Counsel continued to accrue legal fees and now seeks an astounding $15,924 in such legal fees, stemming from a purported 49.8 hours billed, in a case that barely entered the discovery stage.  (Doc. 17).

On November 3, 2021, in light of the circumstances set forth above, Defendant opposed Plaintiff's fee application.  (Doc. 18).  On August 22, 2022, the respective parties held a status

conference pertaining to the instant fee dispute. (*See* Doc. 21). That same day, the Court entered a Scheduling Order directing Plaintiff's counsel to, *inter alia*, file a declaration with respect to the prior legal experience of one of the three (3) attorneys who billed time on this case for Plaintiff, and to submit unredacted versions of the billing records for which they sought fee recovery, for the Court's review, based upon the determination that it was "impossible for th[e] Court to evaluate the pending application for attorney's fees in light of the heavily redacted billing records submitted by Plaintiff's counsel." (Doc. 21).

On September 13, 2022, upon review of the unredacted billing records at issue, the Court determined that many of the entries were improperly redacted because they contained "nothing more than factual information, none of which is subject to any privilege." (Doc. 25). Accordingly, the Court ordered production of these specifically designated time entries, to Defendant, and directed Defendant to file a supplemental brief on such newly disclosed entries, within one week of receipt thereof. (Doc. 25). On September 20, 2022, Plaintiff provided such unredacted versions of the time entries, to Defendant. *See* Exhibit A.

For the reasons set forth below, the vast majority of Plaintiff's Counsel's unredacted time entries are unreasonable pursuant to § 1692k. In particular, Plaintiff's counsel serially bills for administrative and clerical tasks, as well as for excessive, duplicative, and unnecessary events. Moreover, some of counsel's time entries remain vague and/or are impossible to ascertain what exactly counsel did or why it was necessary to the case, even when afforded an opportunity to review the unredacted billing narratives. Finally, although Defendant no longer takes issue with a few entries ordered to be disclosed by the Court (specifically, the December 23, 2020 and September 2, 2021 entries), the newly unredacted records provide important insight and further underscore the various reasons for which other time entries submitted by Counsel should be

2

excluded from any potential fee recovery hereunder. On balance, Plaintiff's Counsel's requested fees should be reduced by a minimum of 30.6 hours and $8960.00, as set forth below. Moreover, Plaintiff's Counsel should be barred from seeking fees for preparing their fee application and redacting time in furtherance thereof, and a 50% percentage reduction of the remaining fees is warranted, given the facts and circumstances of this proceeding. Ultimately, any resultant fee recovery by Plaintiff's counsel should be capped at a total award of $2,877.25, inclusive of costs.

## ARGUMENT

**I.       The Majority of Billing Entries Disclosed by Plaintiff's Counsel Pursuant to the Court's Order Are Not Recoverable upon Review of the Unredacted Records**

The FDCPA provides for recovery of reasonable attorneys' fees and costs by a successful plaintiff. 15 U.S.C. § 1692k(a)(3); *see also Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 95 (2d Cir. 2008). "The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Dagostino v. Computer Credit, Inc.,* 238 F.Supp.3d 404 (E.D.N.Y. 2017). It is accordingly well established that an award of attorneys' fees should be the product of the Court's determination of a reasonable hourly rate multiplied by the reasonable number of hours expended on the case. *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011). In this regard, reasonableness is central to the inquiry of appropriate fee awards.

As Defendant noted in its opposition to Plaintiff's fee application, many of the billing entries for which counsel seeks payment were too vague in their heavily redacted format to sufficiently demonstrate what exactly counsel did with its claimed time, much less to afford a lens into whether such time expenditures were reasonable in the first instance. *See Adusumelli v. Steiner*, 2013 WL 1285260, at *7 (S.D.N.Y. Mar. 28, 2013) (requiring a reduction where "billing entries relating to telephone calls or correspondence with clients, the Court, co-counsel, and

3

opposing counsel, that provide no information whatsoever regarding the purpose or topic of the work, making it impossible for the Court to evaluate the reasonableness of the claimed time"); *Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement v. Helmer-Cronin Const., Inc.*, 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (reducing the total number of hours billed by 20% where a majority of the entries consisted of vague statements such as, "Research," "Telephone call with client," [and] "Study and Review file").

Accordingly, the Court ordered the following entries to be provided to Defendant in an unredacted format, such that they may be substantively analyzed for their relative reasonableness:

- **All billing entries dated December 23, 2020;**
- **CSanders billing entry dated February 18, 2021;**
- **CSanders billing entry dated February 22, 2021 that begins with "Discussion with Jacob Silver;**
- **CSanders billing entry dated May 12, 2021;**
- **JAbreu billing entry dated May 18, 2021 that begins with "Attended court-ordered initial conference";**
- **CGarcia billing entry dated August 10, 2021 that begins with "Uploaded defendant's notice of deposition";**
- **CGarcia billing entry dated August 11, 2021;**
- **JAbreu billing entry dated August 30, 2021 that begins with "Email to and from opposing counsel";**
- **JAbreu billing entry dated September 1, 2021 that begins with "Meeting with JC";**
- **JAbreu billing entry dated September 2, 2021 that begins with "Meeting with client";**
- **JCader billing entry dated September 3, 2021;**
- **JCader billing entry dated September 9, 2021; and**
- **JCader billing entry dated October 1, 2021 that begins with "Telephone call with client".**

Upon a review of Plaintiff's Counsel's unredacted billing entries, it is apparent that the vast majority of the entries are not reasonable, particularly as juxtaposed against the straightforward nature of the claims at issue and the procedural evolution and trajectory of the case.

4

At the outset, Defendant has no issue with the December 23, 2020 or September 2, 2021, entries that the Court ordered unredacted disclosure of, given an opportunity to review the narratives for such time charges. However, the remaining entries listed in the foregoing – and, in fact, the vast majority of Plaintiff's Counsel's billing entries in this case – are not recoverable, given that they predominantly consist of instances wherein attorneys are billing for clerical tasks, multiple attorneys are billing for duplicative work or intra-office conferencing, or the time expended relative to the task described is simply not commensurate with the demands of the case.

### i. ADMINISTRATIVE OR CLERICAL TASKS

The Court may reduce fees for clerical or administrative tasks. *Lamaka v. Russian Desserts, Inc.,* 2021 WL 2188280 (E.D.N.Y. 2021); *see also Singh v. A & A Market Plaza, Inc.,* 2019 WL 4861882 (E.D.N.Y. 2019) ("[w]here counsel seeks compensation for time spent completing administrative tasks or work that should have been accomplished by a less-skilled practitioner, uniform percentage cutbacks are warranted") (internal quotations omitted). Furthermore, "purely clerical or secretarial tasks should not be billed at a paralegal rate", much less at an attorney rate. *See Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 n. 10 (1989).

Of the entries listed above for which the Court ordered production, the following entries describe clerical or administrative tasks, most of which were performed by attorneys billing at rates in excess of $250 per hour:

| Date | Task/Service Description | Time (hrs.) | Rate/hr. | Total Cost |
|---|---|---|---|---|
| 2/18/21 | Received new voicemail recording on Blonder v. ICR; listened to message; call with client re: status; forwarded to Christian to add to file[1] | 0.3 | $450.00 | $135.00 |

---

[1] With respect to this entry, based on the block-billed nature of the time charge and corresponding narrative, it is unclear how much of the $135 charge is specifically sought for the administrative task of "forward[ing] [the recording] to Christian to add to file," however the entry is also vague insofar as it impedes any such analysis into its reasonableness. Furthermore, there is no indication as to what the call "re: status" refers to, nor how it furthered Plaintiff's case. Notably, Mr. Sanders

5

| 8/10/21 | Uploaded defendant's notice of deposition to file; calendared date; called client to confirm availability | 0.3 | $100.00 | $30.00 |
|---|---|---|---|---|
| 8/11/21 | Confirmed date and preparation call with client for [sic] 8/17/2021 | 0.2 | $100.00 | $20.00 |
| 8/30/21 | Email to and from opposing counsel regarding client's availability for deposition. Emailed JC in order to confirm he was available for the time chosen and to advise on prepping the client for deposition | 0.5 | $250.00 | $125.00 |
| 9/9/21 | Telephone call w/ client to confirm deposition not proceeding on 9/10 | 0.2 | $325.00 | $65.00 |
| 10/1/21 | Telephone call with client to advise that deposition will not take place on 10/5 | 0.2 | $325.00 | $65.00 |

In sum, Plaintiff's Counsel racked up $440 dollars in legal fees – solely attributable to just these six entries that the Court ordered unredacted production of – for scheduling, calendaring, and subsequently cancelling depositions of their client, and for filing documents and recordings. Moreover, 1.2 hours of the 1.7 hours spent across these six entries were performed by attorneys.

    ii.    *EXCESSIVE, REDUNDANT, AND UNREASONABLE BILLING ENTRIES*

Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from attorney fee calculation, and, "in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed . . .". *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). In determining whether the amount of hours billed is reasonable, "[t]he relevant issue [is] . . . whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

In this regard, redundant entries describing duplicative work are not considered reasonable and, therefore, are not recoverable. *Chavez v. MCS Claim Services, Inc.,* 2016 WL 1171586, at *5 (E.D.N.Y. 2016) (reducing total hours [billed for] by 30% because "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate"

---

similarly purports to bill – at his senior partner rate – for forwarding documents or recordings for filing purposes on at least ten separate occasions.

and because "some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel."); *Barshay v. Specified Credit Associates I, Inc.,* 2016 WL 3578993, at *4 (E.D.N.Y. 2016) (reducing total hours claimed in an FDCPA action by 20% in light of duplicative work.); *Hop Hing Produces Inc. v. X & L Supermarket, Inc.,* 2013 WL 1232919, at *7 (E.D.N.Y. 2013) (reducing requested fee award for, *inter alia*, "duplicative billing conferences" between attorneys.); *see also Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona,* 188 F.Supp.3d 333, 342 (S.D.N.Y. 2016) (reducing fee award due to, *inter alia*, billing for intra-office conferences between attorneys).

| Date | Task/Service Description | Time (hrs.) | Rate/hr. | Total Cost |
|---|---|---|---|---|
| 2/22/21 | Discussion with Jacob Silver regarding necessary language for BK petition for the Blonder v. ICR case | 0.3 | $450.00 | $135.00 |
| 5/12/21 | Review of discovery plan and joint letter; meeting with Joenni [Abreu] re: same | 0.3 | $450.00 | $135.00 |
| 9/1/21 | Meeting with [Cader] regarding the status of the matter, the client's deposition, and the client's preparation of [sic] same | 0.3 | $250.00 | $75.00 |
| 9/3/21 | Various Correspondences with JAbreu, client re: additional review for deposition[2] | 0.4 | $325.00 | $130.00 |

As reflected in the unredacted narratives corresponding to these entries, counsel has billed another $475.00 in patently unreasonable time, beginning with Sanders' February 22, 2021 act of billing time corresponding to preparation of (and "necessary language for") a pleading in a completely independent bankruptcy proceeding, which had no direct bearing on the instant FDCPA case counsel brought and, at best, could only tangentially relate to Defendant, if at all. As is also clear from even just the few entries provided above, Plaintiff's Counsel serially billed for intra-office meetings and communications with one another, thereby facilitating their instant claim

---

[2] This entry is also vague, as to the meaning and volume of interactions represented by "various correspondences".

7

to an astounding 49.8 hours and $15,924.00 in legal fees, for a case involving no pre-settlement motion practice, and for which Plaintiff never produced discovery nor sat for a deposition.

This pattern is exemplified by the billing activities pertaining to the above-referenced Sanders entry of May 12, 2021, wherein he billed for reviewing the discovery plan letter drafted by Ms. Abreu, and for meeting with her thereon. *See* Exhibit A.  In the abstract, this charge might not be problematic, aside from the intra-office conferencing which is (presumably strategically) combined with another potentially recoverable task within the same billing entry. However, in the context of other charges involving the same events and time period, it becomes apparent how superfluous and unreasonable the aggregate time expenditure between the three billing attorneys was.  In relevant part, Ms. Abreu billed 1.3 hours for drafting the letter and sending it to Mr. Cader and Mr. Sanders for review, at which point Mr. Cader and Mr. Sanders both billed for reviewing the same email and discovery plan, on May 12, 2021 (the Sanders entry is listed above, whereas Cader billed 0.2 hours for this "review").  *See* Exhibit A.  Mr. Sanders then purported to write off a 0.5-hour meeting with Ms. Abreu discussing his review of and revisions to the joint letter, the next day.  *See* Exhibit A.  However, according to the entry excerpted above, he separately billed – at least in part – for having that same meeting with Ms. Abreu on the letter draft, on the previous day.  *See* Exhibit A.  Accordingly, it is not reasonable for both Cader and Sanders to bill for the same review, nor for intra-office conferencing thereon; as such, the newly unredacted Sanders charge on May 12, 2021 should be struck from any recovery.

Finally, in isolation, Defendant does not take issue with Ms. Abreu's 0.5-hour time entry corresponding to her appearance for the May 18, 2021 initial conference, nor the previously redacted narrative supporting it. However, Mr. Cader billed for appearing at the same initial conference, in two separate entries of 0.5 hours each.  *See* Exhibit A.  As such, these time entries

8

are unreasonably duplicative as submitted by Plaintiff's Counsel in the fee application, and Defendant submits that Ms. Abreu's billing entry for that event should only be recoverable if Mr. Cader's mystifying two separate time entries for the same conference are correspondingly rejected.

## II. Plaintiff's Counsel's Voluntary Disclosure of Additional Unredacted Time Records Further Evidences a Pattern of Excessive, Duplicative, and Unreasonable Billing Practices in this Case

Although not specifically contemplated within the Court's September 13, 2022 Order directing Plaintiff's Counsel's production of unredacted billing records to Defendant, Plaintiff elected to produce complete records for additional time entries which had been previously redacted when Defendant originally opposed Counsel's fee application. (Doc. 21). Defendant had initially objected to the vast majority of these newly unredacted time entries on the grounds that they were too vague to permit a meaningful evaluation as to the reasonableness of the time expenditures. *See Adusumelli*, 2013 WL 1285260, at *7. (Doc. 18). However, it is now apparent that an overwhelming majority of these purported time expenditures have independent, substantively-based grounds for denying fee recovery thereon. Put simply, the unredacted records now confirm what was previously suspected: these time entries are excessive, duplicative, and otherwise unreasonable given the facts and demands of the case.

As above, the following entries evidence unreasonable expenditures of attorney time for which fee recovery is now inexplicably sought:

| Date | Task/Service Description | Time (hrs.) | Rate/hr. | Total Cost |
|---|---|---|---|---|
| 1/21/21 | Conversation with client regarding additional calls as well as letters received **from other debt collectors**; reviewed correspondence; discussion with client re: same (**emphasis added**) | 0.6 | $450.00 | $180.00 |

9

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 2/19/21 | Email correspondence with [paralegal] re: e(11) claim[3] | 0.2 | $450.00 | $90.00 |
| 2/22/21 | Reviewed correspondence between CSanders and [bankruptcy attorney] re: bankruptcy considerations | 0.2 | $325.00 | $65.00 |
| 4/5/21 | Westlaw research into whether Rule 68 without offer of fees would be a complete recovery; emails with Brendan re: same; forwarded fee demand to Brendan to determine whether there was an agreement on fee; offered $2k on $5826 | 1.5 | $450.00 | $675.00 |
| 4/6/21 | Email conversation re: settlement; offered either Rule 68 with fee application included or $5826 | 0.3 | $450.00 | $135.00 |
| 4/7/21 | Further discussion w/ Brendan re: settlement[4] | 0.2 | $450.00 | $90.00 |
| 5/6/21 | Spoke to the client regarding her case to get all the background information in anticipation of the initial conference. I asked about additional information | 1.0 | $250.00 | $250.00 |
| 5/7/21 | Review of two emails sent by the client regarding this matter. I called her for additional information and she stated she would be emailing me regarding same. | 0.8 | $250.00 | $200.00 |
| 5/10/21 | Review of two emails sent by the client. I called her again to dispel any confusion she seemed to have over email. | 0.5 | $250.00 | $125.00 |
| 8/17/21 | Spoke with client at length regarding the calls made to her and her family. Listened to recordings left on her and her family's voicemails to conclude that ICR was in fact responsible for calls made | 1.3 | $250.00 | $325.00 |
| 8/30/21 | Reviewed complaint for Article III standing concerns; prepared memorandum re: same to [Sanders] and [Cader] | 0.8 | $250.00 | $200.00 |
| 9/3/21 | Emails to and from client regarding the deposition and any other information she may remember. Additionally, she sent me several emails regarding **yet another debt collector** attempting to collect on the same debt (**emphasis added**) | 0.5 | $250.00 | $125.00 |
| 9/3/21 | Various Correspondences with JAbreu, client re: additional review for deposition | 0.5 | $325.00 | $130.00 |
| 9/5/21 | Review of email from client with additional information regarding the matter. I let her know I would let [Cader] | 0.2 | $250.00 | $50.00 |

---

[3] In addition to being an intra-office communication, this entry is duplicative of a corresponding entry for the same occurrence, by Paralegal Raza. Accordingly, this entry, at a Senior Partner billing rate, should be struck from any fee recovery.

[4] This entry was not previously redacted, however the newly unredacted and corresponding entries on April 5, 2021 and April 6, 2021 have made it clear that this charge chiefly refers to counsel's concerns and negotiations as to attorney's fee recovery and, importantly, not the "settlement" amount in Defendant's offers of judgment (which remained the same in both iterations thereof).

10

|  | know about the additional info she provided in prep for the deposition.[5] |  |  |  |
|---|---|---|---|---|
| 9/7/21 | Several emails to and from [Cader] regarding the extension of discovery including the deposition. | 0.7 | $250.00 | $175.00 |
| 9/13/21 | Emails with [Cader] re: settlement demand | 0.3 | $450.00 | $150.00 |
| 9/13/21 | Emails with [Sanders] re: settlement demand | 0.3 | $325.00 | $97.50 |
| 9/13/21 | Reviewed email from [Cader] re: confidentiality order, meeting with [Cader] re: same | 0.3 | $450.00 | $150.00 |
| 9/13/21 | Emailed [Sanders] regarding need for confidentiality order re: client cell phone numbers | 0.2 | $325.00 | $65.00 |
| 9/13/21 | Meeting with [Cader] re: confidentiality order | 0.3 | $450.00 | $135.00 |
| 9/13/21 | Telephone call w/ client to discuss interrogatories. Reviewed and revised draft discovery responses to RFI and RFP | 2.5 | $325.00 | $812.50 |
| 9/30/21 | Drafted email to CSanders re: Defendant's renewed request for a settlement demand | 0.2 | $325.00 | $65.00 |
| 10/1/21 | Calculated revised settlement demand and forwarded same to [Cader] | 0.4 | $450.00 | $180.00 |
| 10/1/21 | Correspondence w/ CSanders re: prior settlement demands and current status | 0.2 | $325.00 | $65.00 |
| 10/1/21 | Reviewed Rule 68 offer from Brendan. Correspondence with CSanders re: same | 0.3 | $325.00 | $97.50 |
| 10/1/21 | Telephone call with client to advise that deposition will not take place on 10/5[6] | 0.2 | $325.00 | $65.00 |

The relative unreasonableness of the billing entries delineated above largely speak for themselves, given the opportunity to now assess them in their native and unredacted formats. However, certain entries are particularly revealing, insofar as they exemplify an overarching theme of excessive and overlapping billing practices, by and between the three attorneys working this case on behalf of Plaintiff. As the January 21, 2021 and September 3, 2021 billing records indicate,

---

[5] Mr. Cader seeks to collect $162.50, on 0.5 hours of time expended, for, *inter alia,* reviewing the exact same email and substantive matter. Accordingly, this entry is duplicative.

[6] Notably, this phone call would seem to be duplicative and unnecessary, given that Mr. Sanders also held a call with the Plaintiff on the same day, to confirm her acceptance of the Rule 68 offer of judgment, disposing the case. Additionally, even if it is not deemed duplicative, an attorney calling to perform the administrative task of cancelling a deposition, at a rate of $325.00 per hour, would seem excessive and wasteful.

11

some of the time charges for which Counsel seeks fee recovery do not even appear to pertain to this case, as they expressly pertain to "other debt collectors". *See* Exhibit A.

Beyond this, a multitude of Counsel's time expenditures transparently relate to their own desire to maximize their ultimate fee recovery in this case, as opposed to the specific claims alleged in the Complaint. For instance, on April 5, 2021, Mr. Sanders billed 1.5 hours – representing $675.00 in legal fees – for "Westlaw research" informing the structure of settlement, such that counsel could determine whether to accept a Rule 68 offer of judgment containing an attorney fee settlement, or separately apply for an award of attorneys' fees. Counsel then billed an additional 0.5 hours for negotiating their position on this subject.

Several of Plaintiff's Counsel's time entries illustrate patently excessive expenditures of time, given the tasks performed. In this regard, in three successive time entries spanning May 6, 2021 to May 10, 2021, Ms. Abreu billed an aggregate 2.3 hours for purportedly reviewing four emails and placing three phone calls to the client. Moreover, the time entries themselves expressly indicate that the "additional information" provided in these communications was furnished in the emails. It is virtually inconceivable that a substantive review of four emails can expend 2.3 hours of attorney time nor merit a fee recovery of $575.00.[7] Similarly in this vein, Ms. Abreu billed an additional 1.3 hours of time on August 17, 2021, during an apparent phone call with the client, to discuss the "recordings left on her and her family's voicemails to conclude that ICR was in fact responsible for [the] calls made." *See* Exhibit A. Perplexingly, though, Mr. Sanders had previously billed 0.5 hours and 0.3 hours on December 22, 2020, and January 4, 2021, respectively, while

---

[7] The stated purpose of these communication was to elucidate the necessary "background information" prior to an anticipated initial conference with the Court; however, Plaintiff's Counsel brought this lawsuit and filed the corresponding Complaint on February 19, 2021. Surely, the law firm that brought the case would have sufficient information to conduct a preliminary conference, nearly three months after filing suit.

discussing ostensibly the same voicemails with Plaintiff, over the phone. *See* Exhibit A ("continued discussion with client regarding calls . . .made to [Plaintiff's two daughters, brother, and husband] all to cell phones"). Moreover, Mr. Sanders had previously billed an aggregate of 1.4 hours (consisting of $630.00 in fees), on February 18, 2021, February 22, 2021, and four separate times on February 23, 2021, for listening to the recordings and voicemails messages provided by the Plaintiff, and contemporaneously discussing the implications of such calls with her. *See* Exhibit A. There is no indication, whatsoever, in Counsel's billing records to suggest an independent basis for re-listening to the calls, on August 17, 2021, nearly six months after Plaintiff received them and filed suit against Defendant, and requesting an additional 1.3 hours and $325.00 in legal fees for doing so. *See* Exhibit A. Thereafter, on August 30, 2021, Ms. Abreu "reviewed" the Complaint that her office filed in federal court over 6 months prior, to purportedly confirm the existence of Article III standing, and expended 0.8 hours and seeks $200.00 associated therewith.

Similarly, on September 13, 2021, Plaintiff's Counsel's billing records indicate that internal settlement discussions were held, based upon the 1.4 hours billed – and corresponding $567.50 now sought – for Mr. Sanders and Mr. Cader to email one another "re: settlement demand," and to meet with and email one another about the potential need for a related "confidentiality order". *See* Exhibit A. Yet, the same day, Mr. Cader stilled claimed to expend 2.5 hours, racking up $812.50 in legal fees, for a phone call with the client "to discuss interrogatories," and related "review" of written discovery drafts. Tellingly, the parties agreed to a settlement a mere 18 days later, and Plaintiff never did produce the written discovery.

Finally, Plaintiff's Counsel repeatedly billed for intra-office (oftentimes duplicative) communications. As reflected in the chart above, on February 19, 2021, Mr. Sanders billed 0.2 hours for emailing his paralegal; likewise, on February 22, 2021, Mr. Cader billed 0.2 hours for

13

purportedly reviewing correspondence between Mr. Sanders and the Plaintiff's bankruptcy attorney. Thereafter, on September 7, 2021, Ms. Abreu billed 0.7 hours for "several emails" with Mr. Cader, apparently regarding deposition and discovery scheduling. As noted above, Mr. Cader and Mr. Sanders then billed 1.4 hours for emailing and meeting with one another, on September 13, 2021, alone. Then, between September 30, 2021, and October 1, 2021, Mr. Cader and Mr. Sanders combined for another 1.1 hours – and $407.50 sought in fees – for emailing one another in advance of accepting the exact same "$1001.00 plus reasonable attorney's fees" offer of judgment as Defendant had offered on March 23, 2021. Therefore, such charges are unacceptably redundant and wasteful, particularly at the partner rate sought by Mr. Sanders and Mr. Cader.

### III. The Nature and Circumstances Surrounding Plaintiff's Counsel's Newly Unredacted Time Charges Should Bar Recovery of All Attorneys' Fees Sought in Connection with Preparing the Fee Application

From October 15, 2021 to October 20, 2021, Plaintiff's counsel amassed a purported 6.1 hours of time spent preparing its routine motion for attorneys' fees, and now seek to recover $2,207.50, for such time expenditure. Moreover, 1.8 hours of this time was directly spent "compiling" and "redacting" Counsel's time entries, as reflected in billing entries from October 17, 2021, and October 20, 2021. Another 0.4 hours were accumulated by Mr. Cader emailing Mr. Sanders, as is now apparent based upon Counsel's production of unredacted entries. In light of the Court's Order requiring that many of these redacted entries be disclosed in native format and the corresponding time and resource expenditure necessitated by this exercise, Plaintiff's Counsel should not be rewarded with fee recovery for its improper redaction of time, or obfuscation of the true nature of the billing entries for which it seeks a fee award. Accordingly, Counsel should be barred from recovering purported attorney's fees for preparing an application for attorney's fees. At minimum, Plaintiff's Counsel's sought recovery associated with their application for fees

should be greatly reduced from the 6.1 hours now sought. *See Webb v. Mercantile Adjustment Bureau, LLC,* Case No. 1:19-cv-00755, (W.D.N.Y. Aug. 8, 2022) ("a reasonable, paying client would not willingly pay counsel to spend 6.2 hours to prepare a motion [and] the key inquiry in determining reasonableness of an attorney's . . . hours billed is whether a paying client would be willing to pay [for them]." Accordingly, "the court will credit . . . only two hours for preparing a routine motion for attorney's fees").

## CONCLUSION

For the reasons set forth in the foregoing, the production of Plaintiff's Counsel's unredacted billing entries further establishes that the vast majority of time sought by Plaintiff's Counsel in their fee application is not compensable. While Defendant takes no issue with certain of Plaintiff's entries, upon being afforded an opportunity to review the unredacted versions thereof, the added context offered by a review of Counsel's billing records in their native format is instructive as to other instances of fee recovery sought for administrative, unnecessary, or otherwise unreasonable tasks, which were previously shrouded by redactions. On balance, and upon a review of Counsel's complete billing records, Defendant respectfully submits that Plaintiff's Counsels' recovery should be reduced, as follows:

(1) reduce Plaintiff's counsel's claimed fees by 30.6 hours and $8960.00, for billing for administrative and clerical tasks, vague time entries, and unreasonably excessive, duplicative, and unnecessary billing entries;

(2) reduce Plaintiff's counsel's sought fee award by an additional $2,207.50, for the time sought in connection with redacting time entries and preparing the application for attorneys' fees; and

(3) a further reduction of remaining fees sought by 50%, based upon Plaintiff's Counsel's Firm's repeated disregard of this Court's express precedent with respect to reasonableness and documentation of attorneys' fees, including the failure to include the required declaration as to Ms. Abreu's legal experience in support of its fee application in the first instance and improper redactions of numerous billing records, and for prolonging the disposition of this proceeding.

15

As a result, Defendant submits the Court should enter an Order limiting Plaintiff's reasonable attorneys' fees to the amount of $2,378.25, plus costs in the amount of $499.00, for a total award of $2,877.25.

DATED:	September 27, 2022

**LIPPES MATHIAS LLP**

/s Brendan H. Little
Brendan H. Little, Esq.
Attorneys for Defendant
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com